IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.*

*Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*

*Defendants*.

Case No. 25-cv-342

**SUPPLEMENTAL DECLARATION OF BRIELYN AKINS ("BRIE FRANKLIN")**

I, Brielyn Akins ("Brie Franklin"), declare as follows:

**I.   Background**

1. I am the Executive Director at the Colorado Coalition Against Sexual Assault (Colorado Coalition), Colorado's federally designated sexual assault coalition.

2. The Colorado Coalition was founded in 1984 and is headquartered in Denver, Colorado. The Colorado Coalition is a statewide sexual assault coalition committed to providing leadership, advocacy, and support to address and prevent sexual violence.

3. The Colorado Coalition supports members, partners, and the broader community through technical assistance, training, publications and other resources, statewide systems change, and public policy education and advocacy. The Colorado Coalition also provides initial response, information, and referrals to victims of sexual assault.

1

4. The Colorado Coalition receives a grant from the Department of Health and Human Services (HHS). The Colorado Coalition has an annual budget of roughly $1.6 million. Of that total amount, roughly $135,000 comes from an HHS grant.

## II. The Colorado Coalition's Member Organizations

5. The Colorado Coalition is a membership organization with over 90 members. Membership is open to all organizations and individuals that endorse the Colorado Coalition's mission, vision, and values. The Colorado Coalition's membership includes sexual assault programs and dual domestic violence and sexual assault programs; affiliate agencies, including college and university campuses, law enforcement agencies, district attorneys' offices, medical professionals, public health agencies, offender treatment programs, and other organizations; and individual sexual assault survivors, victim advocates, and concerned persons throughout Colorado. These members complete an application to join and typically pay a suggested amount of dues based on their budget.

6. The Colorado Coalition's membership includes "Member Doe 1," which is a community-based nonprofit that provides free and confidential services, including rapid rehousing, to victims of domestic violence in an urban area. The Colorado Coalition's membership also includes "Member Doe 2," which is a community-based nonprofit that provides free and confidential services to victims of domestic and sexual violence in a rural area.

7. Members of the Colorado Coalition receive grants from HUD and HHS.

**III.     HUD's New Funding Conditions**

8. HUD has begun applying new funding conditions on HUD grants that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior years.

9. The NOAs for the HUD CoC grants provide that the recipient's "use of funds provided under" the agreement and its "operation of projects assisted with" grant funds "are governed by … [a]ll current Executive Orders." The NOAs also include requirements that the recipient: (1) "shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;" (2) "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [The False Claims Act];" (3) "certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;" and (4) "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment."

**IV.     The Colorado Coalition Members' HUD Grants**

10. The Colorado Coalition's members have received HUD grants, including grants under the CoC Grant Program ("CoC Grant").

11. For example, on March 11, 2025, Member Doe 1 received a Notice of Award (NOA) from HUD for a total of $150,299 through a CoC Grant in FY 2024. The grant has a performance period of May 1, 2025 through April 30, 2026 and a budget period of May 1, 2025 through April 30, 2026. The NOFO for this award did not include the new

funding conditions described above, but the NOA did. On August 15, 2025, Member Doe 1 received the grant agreement, which includes the challenged conditions. Member Doe 1 needs to draw down as soon as possible for cashflow reasons, given that the performance period for the award has already begun.

12. Declining this funding would have a detrimental impact on the Colorado Coalition's members. Without HUD funding, they would have to stop providing critical housing for victims of domestic violence and their children. Victims of domestic violence and their children in Member Doe 1's service area would be without this resource because Member Doe 1 is the only provider of housing specifically for domestic violence victims serving their area. Between October 1, 2024 and June 30, 2025, Member Doe 1 provided rapid rehousing services to 43 victims of domestic violence and their children. Without this assistance, these victims would lose housing and face eviction.

## V. HHS's New Funding Conditions

13. The new HHS Grants Policy Statement (GPS) imposes the following new conditions on grantees: (1) it requires that all grant recipients "must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of [the False Claims Act];" and (2) it provides that by accepting the grant award, recipients certify that: (i) "they do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws"; and (ii) "they do not engage in, and will not during the term of this award engage in, a discriminatory prohibited boycott." HHS states that it "reserves the right to terminate financial assistance awards and claw back all funds if the recipients, during the term of this award, operate

4

any program in violation of Federal anti-discrimination laws or engages in prohibited boycott." *Id.* at 19.

14. The HHS GPS applies to nondiscretionary "awards and award modifications that add funding made on or after April 16, 2025," including "supplements to award, competing and non-competing continuations," (other than awards from NIH), and it applies to all HHS recipients and subrecipients other than individuals.

15. In addition to the GPS conditions, HHS's Administration for Children and Families (ACF) is now imposing new funding conditions on ACF nondiscretionary and discretionary grants, including Family Violence Prevention and Services Act ("FVPSA"), that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior years.

16. The new ACF Standard Terms and Conditions document provides that a "Civil Rights Assurance" applies to new awards made on or after May 8, 2025, which requires that recipients "must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of [the False Claims Act];" and provides that, "[b]y accepting the grant award, recipients are certifying that: (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote the following in violation of Federal anti-discrimination laws: DEI, DEIA, or discriminatory equity ideology."

17. The Center for Disease Control and Prevention ("CDC") has updated their policies to impose new conditions on certain new awards and award modifications by incorporating the HHS GPS.

**VI.    The Colorado Coalition's HHS Grant**

18. The Colorado Coalition has applied for and received a competitive grant from the Center for Disease Control (CDC) for the Rape Prevention and Education Program ("RPE Grant") for the past two years.

19. The Colorado Coalition has used RPE Grant funds for many purposes. For instance, these funds support strategies to create environments that protect against sexual violence such as implementing comprehensive human sexuality education, as defined in Colorado law. Comprehensive human sexuality education "must be … culturally sensitive" and "must not explicitly or implicitly: "exclude the health needs of intersex individuals or lesbian, gay, bisexual, or transgender individuals." "'Culturally sensitive' includes resources, references, and information that are meaningful to the experiences and needs of communities of color; immigrant communities; lesbian, gay, bisexual, and transgender communities; people who are intersex; people with physical or intellectual disabilities; people who have experienced sexual victimization; and others whose experiences have traditionally been left out of sexual health education, programs, and policies." Colorado Revised Statutes § 22-1-128.

20. On June 27, 2025, HHS awarded the Colorado Coalition a total of $135,000 through the RPE Grant in FY 2025. The grant has a period of performance of June 29, 2024 through June 30, 2028 and a budget period of June 30, 2025 through June 29, 2026.  The NOFO did not include the new funding conditions, but the NOA indicates that the HHS GPS and CDC Terms and Conditions, which contains the new funding conditions described above, apply to the award. The Colorado Coalition needs to accept this renewal award by drawing down funds by July 30, 2025.

21. Declining this funding would have a detrimental impact on the Colorado Coalition. Without the funding for this grant, the Colorado Coalition could not continue doing the work outlined in our RPE Logic Model and Work Plan, including collaborating with the Colorado Department of Public Health and Environment's (CDPHE) Sexual Violence Program to enhance the existing state action plan to support state- and community-level implementation of sexual violence primary prevention; participating on CDPHE's Comprehensive Human Sexuality Education oversight entity and its curricula subcommittee to provide guidance to schools/districts on how to meet state standards; or providing training and technical assistance to our members and partners to increase their capacity for sexual violence primary prevention. Decreased primary prevention efforts would increase the risk for Coloradans to experience sexual violence and subsequent adverse short and long-term health outcomes, contributing to a substantial public health burden. The Colorado Coalition would also have to terminate approximately 1.2 FTE of staff.

### VII. The Colorado Coalition Members' HHS Grants

22. The Colorado Coalition's members have received FVPSA Program Grants ("FVPSA Grant"), which are passed through the State Administrator's office. These grants are subject to the terms and conditions that are applied to the award made to the State.

23. For example, "Member Doe 1":

    a. On May 28, 2025 date, the State Administrator's Office awarded Member Doe 1 a total of $54,345 through a FVPSA Grant in FY 2026. The grant has a period of performance of October 1, 2025 through September 30, 2026 and a budget period of October 1, 2025 through September 30, 2026. Because this is a discretionary

grant awarded after April 16, 2025, the new funding conditions in the HHS GPS apply to it. Member Doe 1 is awaiting contracting documents to sign and accept the award.

24. For example, "Member Doe 2":

   a. On May 28, 2025 date, the State Administrator's Office awarded Member Doe 2 a total of $52,505 through a FVPSA Grant in FY 2026. The grant has a period of performance of October 1, 2025 through September 30, 2026 and a budget period of October 1, 2025 through September 30, 2026. Because this is a discretionary grant awarded after April 16, 2025, the new funding conditions in the HHS GPS apply to it. Member Doe 2 is awaiting contracting documents to sign and accept the award.

25. Declining this funding would have a detrimental impact on the Colorado Coalition's members. Without HHS funding, members would have to cut back essential services and reduce staff, leaving victims of domestic violence and sexual assault without resources to keep them, and their children, safe. For example, between October 1, 2024 and June 30, 2025, Member Doe 1 provided 106 victims with 2,871 nights of emergency shelter, provided 187 non-residential victims with services, and responded to 2,186 calls on their crisis hotline. Between January 1, 2024 and December 31, 2024, Member Doe 2 provided services to 126 victims of domestic and sexual violence and responded to 467 calls on their crisis hotline.

## VIII. HUD's and/or HHS's New Funding Conditions Place the Colorado Coalition and its Members in an Untenable Position

26. Agreeing to the HHS conditions would cause the Colorado Coalition and its members profound harm. The funding conditions are vague, and several could be read to conflict with the Colorado Coalition's core mission and the activities it has undertaken for years in furtherance of that mission and in reliance on HHS grants. The funding conditions may require the Colorado Coalition to cease engaging in activities that it had previously understood the grants to plainly support. Thus, the Colorado Coalition does not know how it may comply with the funding conditions, while also staying true to its mission and engaging in required grant activities for sexual violence primary prevention.

27. The Colorado Coalition is concerned about conditions requiring that we certify that we do not operate any programs that violate any applicable Federal antidiscrimination laws, implying that compliance with those antidiscrimination laws is material for False Claims Act Purposes. Although we have always complied with federal antidiscrimination laws, the DEI Executive Order and statements from the DOJ indicate that the government intends to enforce a legally unsupported, new interpretation of federal antidiscrimination law as prohibiting all aspects of programs focused on DEI and DEIA. The Colorado Coalition's guiding principles require "addressing the root causes of sexual violence," and values include a commitment to "[d]ismantle systems of oppression to create a more just and equitable society," and to "create inclusive and anti-oppressive policy and practices." It is unclear whether the Colorado Coalition's guiding principles and values violate the certification, and whether the Colorado Coalition could comply with the

9

administration's interpretation of federal antidiscrimination law without adopting a view antithetical to its true beliefs.

28. The Colorado Coalition is also concerned that it cannot comply with conflicting RPE Grant requirements and the HHS GPS new grant conditions. As stated in the 2024 RPE Grant NOFO for a four-year project period from June 30, 2024 through June 29, 2028, "[c]ertain communities face a higher burden of SV [sexual violence] due to systemic inequities, which worsen these adverse outcomes. These health inequities, discussed further in this document, highlight the need to address social and structural determinants of health which is necessary for prevention of SV."; "We require SA Coalitions to collaborate with [state health departments] and other partners to address social and structural determinants of health."; and "Achieving health equity also requires addressing root causes that disproportionately disadvantage people and communities based on characteristics such as race, ethnicity, gender, and ability. These causes can include racism and biases in societal values and public policy." The NOFO includes a link to a CDC webpage about social determinants of health (SDOH), which states that "SDOH, including the effects of centuries of racism, are key drivers of health inequities within communities of color."
(https://www.cdc.gov/about/priorities/why-is-addressing-sdoh-important.html, accessed July 11, 2025)

29. The Colorado Coalition operates programs such as providing training and technical assistance about sexual violence primary prevention efforts that focus on the unique needs of Lesbian, Gay, Bisexual, Transgender, Questioning, Intersex, Asexual and Two Spirits communities, specific racial/ethnical/cultural communities, and people with

10

disabilities, among others. Now, it is unclear whether these programs would fall within the administration's interpretation of federal antidiscrimination law as prohibiting DEI and DEIA programs.

30. For the same reasons, the Colorado Coalition is concerned that it cannot comply with HHS conditions that prohibit the operation of any programs that "advance or promote DEI, DEIA, or discriminatory equity ideology."

31. The Colorado Coalition and its members are also concerned about the HUD condition that prohibits using grant funds to "promote" gender ideology. Treating victims with dignity and respect, including using their preferred pronouns and providing appropriate services based on their gender identity, is fundamental to a trauma-informed, victim-centered approach. It is unclear whether the Colorado Coalition's members may continue these practices and activities while complying with the funding condition not to "promot[e] gender ideology."

32. The Colorado Coalition and its members are concerned about the HUD conditions that prohibit using grant funds to "promote" "elective abortion." Our members do not provide abortion care, but do not know what the government may consider to "promote" abortion. Providing information about options and resources, including reproductive health care and abortion, is fundamental to a trauma-informed, victim-centered approach, and members offer clients information about any health care services they may need, including abortion.

33. The Colorado Coalition and its members are concerned about the HUD condition providing that use of grant funds and operation of projects assisted with grant funds are governed by "[a]ll current Executive Orders," could fundamentally affect how our

11

members provide services and leaves the Colorado Coalition and its members uncertain how to treat executive orders entirely irrelevant to its/their programs, including those that predate this administration.

34. The new funding conditions present the Colorado Coalition and its members with an impossible choice. The Colorado Coalition and its members could forgo accepting HHS grant awards and face the direct consequences to its/their financial health and ongoing operations, and to those who receive direct services. Or the Colorado Coalition and its members could accept the funding with the conditions and jeopardize its/their mission and compliance with statutory or regulatory requirements, and face enormous risks of litigation and government investigations under the False Claims Act.

35. Additionally, the Colorado Coalition and its members would have to fundamentally change its/their programming or accept new grants and risk running afoul of various funding conditions imposed on those grants.

36. The Colorado Coalition and its members fear that if it/they agrees to the new funding conditions, it/they could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make the Colorado Coalition and its members concerned about applying or accepting an award. To mitigate these risks, the Colorado Coalition and its members would have to change its/their practices, in many cases contrary to its/their core values.

## IX. These Funding Conditions Threaten to Harm Domestic Violence and Sexual Assault Victims and Survivors

37. Agreeing to the conditions would cause the Colorado Coalition and its members profound harm. The funding conditions are vague, and several could be read to conflict with the Colorado Coalition's core mission. The funding conditions may require the Colorado Coalition and its members to cease engaging in activities that it/they had previously understood HHS and HUD grants to plainly support. Thus, the Colorado Coalition does not know how it, and its members, may comply with the funding conditions while also staying true to its mission and implementing required grant activities.

38. Conversely, if the Colorado Coalition or its members turned down the funds because of the conditions, the reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual assault and domestic violence.

39. The Colorado Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the victims they serve and operate with evidence-based, trauma-informed, victim-centered policies and practices.

40. In the absence of the services funded through HUD and HHS grants, sexual assault and domestic violence victims will be confronted with more barriers when trying to access services following their assault. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements they have to navigate. This will immediately lead to fewer victims receiving the support and resources they and their

children need to be safe and more becoming homeless, being unable to work or contribute to society in other ways, and needing prolonged medical and mental health care.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 17, 2025.

                                    /s/ *Brielyn Akins*

                                    Brielyn Akins
                                    Colorado Coalition Against Sexual Assault