## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST

DOMESTIC VIOLENCE, *et al.*

*Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., in his official

capacity as Secretary of the United States

Department of Health and Human

Services, *et al.*

*Defendants*.

## DECLARATION OF AMANDA DOTSON

I, Amanda Dotson, declare as follows:

**I.    Background**

1.    I am one of the two Executive Directors of the Wisconsin Coalition Against Sexual Assault, Inc. (the "Wisconsin SA Coalition" or the "Coalition"), which is Wisconsin's federally designated sexual assault coalition.

2.    The Wisconsin SA Coalition was founded on October 17, 1985, and is headquartered in Madison, Wisconsin. The Wisconsin SA Coalition works to create social change to end

sexual violence by supporting and centering survivors, advocating for systemic and legislative change, and strengthening the capacity of sexual assault service providers across the state of Wisconsin. The Wisconsin SA Coalition provides its members with individualized training and technical assistance opportunities, access to support and resources, and invitations to coalition-hosted events.

3. Although the Wisconsin SA Coalition does not provide direct services, it does provide information, support, and referrals to survivors who contact them—particularly those who have had harmful experiences or were turned away from local service providers. It also has historically hosted survivor-hosted healing events, and it continues to host in-person and web-based spaces and manage a listserv for survivors and allies.

4. My organization provides training and technical assistance to organizations addressing the needs of sexual assault survivors and working to prevent sexual violence. My organization provides statewide leadership by building an essential infrastructure that not only works to reduce violence at the state level, but also supports programs to prevent sexual violence in communities throughout the state.

5. My organization receives grants from the Department of Health and Human Services (HHS). My organization has an annual budget of roughly $ 1 million. Of that total amount, roughly $260,000 comes from HHS grants.

## II.   **My Organization's Member Organizations**

6. The Wisconsin SA Coalition is a membership organization with approximately 75 members. There are two types of membership. First, Sexual Assault Services Program (SASP) Membership in the Wisconsin SA Coalition is open to agencies whose primary function is providing sexual assault services and prevention and who demonstrate a

commitment to the Coalition's Framework. See https://www.wcasa.org/about/framework/. Most members in the Wisconsin SA Coalition are SASP Members. Second, the Wisconsin SA Coalition also has a small number of individuals and organizations who are Partner Members. This type of membership is open to individuals and organizations who want to join the movement to end sexual violence and who demonstrate a commitment to the Coalition's Framework.

7. Members of my organization receive grants from HUD and HHS.

## III.  **HUD's New Funding Conditions**

8. HUD has begun applying new funding conditions on HUD grants that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior years.

9. The NOAs for the HUD CoC grants provide that the recipient's "use of funds provided under" the agreement and its "operation of projects assisted with" grant funds "are governed by … [a]ll current Executive Orders." The NOAs also include requirements that the recipient: (1) "shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;" (2) "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [The False Claims Act];" (3) "certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;" and (4) "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment."

IV.    **My Organization's Members' HUD Grants**

10. My organization's members have received HUD grants, including grants under the CoC Grant Program.

11. For example, Wisconsin SA Coalition Member Doe 1 receives HUD funds under the CoC Grant program, specifically the Continuum of Care (CoC) Rapid Re-housing (RRH) grant. They receive these grant funds through the Continuum of Care (CoC) in the form of a sub-grant. All interaction thus far has been with the CoC and not HUD. The CoC Administers the grant, and the Sub-Grant Agreement is with the CoC.

   a. On 9/30/2024, HUD awarded Wisconsin SA Coalition Member Doe 1 a total of $296,089 through the CoC Grant in FY 24/25. The grant has a performance and grant period of 10/01/24 – 9/30/25. They accepted this award on 09/30/25. The NOFO and NOA did not include the new HUD funding conditions but expect that the next award will include those conditions. The subgrant expired on 09/30/2025 and they received a the subgrant continuing application materials from the CoC in and award for the grant period of 10/1/2025 – 9/30/2026.

   b. Declining this funding would have a very significant detrimental impact on the Wisconsin SA Coalition Member Doe 1 and survivors in their community. They currently have funding to provide rental assistance to up to 10 households fleeing domestic violence and to provide case management and outreach for the project. This subgrant funds 2.2 FTEs. Without this grant, they would lose the ability to provide housing for survivors and would have to lay off at least two full-time staff. They would lose the most effective domestic violence homicide prevention

4

tool and because they would have less staff, many less survivors would receive services.

12. Wisconsin SA Coalition Member Doe 3 received HUD grants, including grants under the CoC Grant Program. They receive one grant as pass-throughs from the Wisconsin Balance of State Continuum of Care (WISBOSCOC) and another through the county grant holder for WISBOSCOC regional distributions. Wisconsin SA Coalition Member Doe 3 does sign awards but as a subgrantee through WISBOSCOC.

   a. On 10/01/2024, HUD awarded Wisconsin SA Coalition Member Doe 3 a total of $257,513 through the CoC Grant in FY2024. The grant has a period of performance of 3 years and a budget period of 10/01/2024 through 09/30/2025. They accepted this award on 10/28/24. That NOFO and NOA did not include the new HUD funding conditions described above but, as it is a yearly continuation grant, they were awarded a grant for this current cycle for 1.5 years and understand the new funding conditions apply.

   b. Without HUD funding, Wisconsin SA Coalition Member Doe 3 would not be able to house up to 9 individuals and/or families who were homeless as a result of domestic violence. These 9 households would be in jeopardy of returning to unsheltered homelessness on the streets, couch surfing with family, friends or anyone who will allow them. Sometimes these already vulnerable people are at risk for further abuses from individuals who allowed a place to stay with ulterior expectations. Wisconsin SA Coalition Member Doe 3 would have to reduce 2 staff members and cut the Domestic Violence Rapid ReHousing Program. As a newer grantee, they have invested the organization and staff to incorporate extensive additional policies, tracking, and reporting procedures. There was a lot of thought and revisions through time to design a program

that meets the needs of community members in need and to balance agency implementations, documentations and compliance so that there is confidence in consistent application and use of the funds. To cut this funding or to do an abrupt major redesign will undo years of building capacity within agencies and funders and will disrupt or remove services to very vulnerable populations. Wisconsin SA Coalition Member Doe 3 also receives HUD CoC Street Outreach funds to support the Safe Place Parking Program with 35-42 cars a night on the lot. It is a victory when someone can be placed in a HUD CoC funded unit to provide them with the essential supportive services for their successful transition to long-term housing stability.

13. Wisconsin SA Coalition Member Doe 4's current HUD grant awards consist of: DV-Rapid Re-Housing (DVRR) subgrant in the amount of $342,905; CDBG-CV grant in the amount of $152,223; and ESG-EHH[1] grant for $19,352. All funds are received as a pass-through from the state and other organizations.

    a. On October 1, 2024, HUD awarded Wisconsin SA Coalition Member Doe 4 a total of $342,905 through the CoC Grant in federal FY25. The grant has a performance and budget period of 10/01/2024 – 09/30/2025. They accepted this award on 10/01/2024. The NOFO and NOA did not include the new HUD funding conditions described above but Wisconsin SA Coalition Member Doe 4 received a continuation grant contract for the 10/01/2025 – 09/30/2026 period in late September 2025 for federal FY26.

---

[1] "ESG-EHH funding" refers to a combination of funding sources focused on addressing homelessness, specifically the HUD Emergency Solutions Grants (ESG) program and the Emergency Housing and Homelessness (EHH) program. In Wisconsin, it refers to the state's combined distribution of ESG funds and state-funded EHH programs to lead applicants within the state's Continuum of Care and Local Homeless Coalitions.

b.  On 07/08/2025, HUD awarded Wisconsin SA Coalition Member Doe 4 a total of $152,223.91 through the CoC Grant in federal FY25. This grant has a performance and budget period of 07/01/2025 – 05/31/2026. They accepted this award on 07/09/2025. This is a new funding source for Wisconsin SA Coalition Member Doe 4.

c.  On 10/14/2024, HUD awarded Wisconsin SA Coalition Member Doe 4 $19,352 through the CoC Grant in federal FY25. This grant has a performance and grant period of 10/01/2024 – 09/30/2025. They accepted this award on 10/15/2025. The NOFO and NOA did not include the new HUD funding conditions described above, however expect the next award will include those conditions. Wisconsin SA Coalition Member Doe 4 applied for continuation funding and received a grant contract for the 10/01/2025 – 09/30/2026 performance and budget period for federal FY26.

d.  Declining or being unable to use HUD funding would have a significant detrimental impact on Wisconsin SA Coalition Member Doe 4. Their active HUD awards total $514,481. With an estimated operating budget for FY 2026 of approximately $1.4M, HUD subgrants represent approximately 39% of their agency budget. Five full-time positions currently rely on HUD funding for at least a portion of wage and benefits, including one full-time Supportive Services Coordinator/Case Manager for DV-RRH; two full-time Supportive Services Directors who provide case management and housing and counseling services; and one full-time Supportive Services Advocate who provides shelter services and advocacy.

e.  DV-RRH funding currently supports eight households who have fled domestic violence and are now receiving ongoing, income-based rental assistance—21 people, including 13 children, and their pets. Ongoing rental assistance and payments to area landlords would

7

be in jeopardy, and victims of violence could, once again, be homeless. Families in the program receive utility assistance; legal support; emergency food—all of which would be eliminated—putting them and their families at risk. Ongoing case management would be eliminated, including current housing advocacy and services, financial counseling, and employment counseling.

f.  The CDBG grant was just awarded to Wisconsin SA Coalition Member Doe 4 and is expected to fund shelter services to approximately 35 households over the next ten months. It will also provide emergency motel vouchers to an estimated 18 households; one-time rental assistance and utility assistance to an estimated 12 households; and one-time utility assistance to an estimated 12 households. Without this funding, approximately 75 households experiencing domestic violence could again be in danger, and/or at risk of homelessness and/or having electricity, heat, and water utilities interrupted.

g.  The ESG-EHH grant supports Wisconsin SA Coalition Member Doe 4 emergency shelter expenses, including security, utilities, shelter supplies, and food that keep approximately 85 victims of domestic violence and their pets safe. Without this grant funding, shelter services would be reduced. More families would be forced to remain in abusive situations due to lack of crisis shelter. They would be forced to make difficult budget cuts, including potentially eliminating a full-time staff position.

14. Wisconsin SA Coalition Member Doe 5 receives HUD grants, including grants under the CoC Grant Program and EHH. They receive these funds as a pass through from a statewide organization.

h.  On 10/01/2024, HUD awarded Wisconsin SA Coalition Member Doe 5 a total of $202,427 through the CoC Grant in FY 2024. The grant has a period of performance of 10/1/2024 – 9/30/2025 and a budget period of 10/1/2024 through 9/30/2025. They accepted this award on 10/01/2024. The NOFO and NOA did not include the new HUD funding conditions described above but they have received a yearly grant that is consistent even though there is a NOFO every year. Wisconsin SA Coalition Member Doe 5 applied via the pass-through organization.

i.  Declining this funding would have a very significant detrimental impact on the organization. Without HUD(CoC) funding, Wisconsin SA Coalition Member Doe 5 would lose 2 full-time staff (from of team of only 18). They would be unable to pay rent for the 12-16 households that are enrolled in the program at any one time. They would be unable to pay housing application fees and unable to assist homeless victims of domestic violence in finding housing. Households in this program anticipate receiving 12-24 months of rental assistance. Without this funding, households lose stability and are at risk of being homeless or at risk of returning to a dangerous living situation.

j.  Wisconsin SA Coalition Member Doe 5 also applied for the EHH funding in the future. Declining EHH funding would have a detrimental impact on the organization. Without this funding, they would lose funds for case management, which might mean they have to reduce staff. A reduction in staff may also reduce shelter capacity.

V.    **HHS's New Funding Conditions**

15. In July 2025, HHS issued a new revised Grants Policy Statement (July GPS) that imposed new conditions on grantees: It required that, "[b]y applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination

laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams," and applies to awards and modifications adding funding made on or after April 16, 2025.[2]

16. In August, HHS revised its GPS again, effective October 1, 2025 (October GPS), which includes the same HHS Discrimination Certification and applies to awards and modifications that add funding made on or after October 1, 2025.

17. The October HHS GPS also includes a requirement that grantees "certif[y]" that they are "compliant with Title IX of the Education Amendments of 1972 …, including the requirements set forth in [the "Gender Ideology" Order], and Title VI of the Civil Rights Act of 1964" and that they "will remain compliant for the duration of the Agreement." This condition also requires covered recipients to "certify" that this requirement is a "material term[] of the Agreement," that "[p]ayments under the Agreement are predicated on compliance" with Title IX and Title VI and that the recipient "therefore … is not eligible for funding … absent compliance with" those requirements, and that the recipient "acknowledges that this certification reflects a change in the government's position regarding the materiality" of those requirements. A recipient must also certify that it "acknowledges that a knowing false statement relating to Recipient's compliance with the above requirements and/or eligibility for the Agreement may subject Recipient to liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001."

---

[2] In April of 2025, the new HHS revised its Grants Policy Statement (GPS) to impose new conditions on grantees prohibiting the operation of "DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws." The July GPS replaced the April GPS.

18.  In May 2025, HHS's Administration for Children and Families (ACF) updated its Standard Terms to adopt a new certification requirement substantially similar to the HHS Title IX Certification, which is identical to the HHS Title IX Certification except that it does not explicitly refer to the "Gender Ideology" Executive Order. In July 2025, ACF also updated its Standard Terms to make the same change and adopt the HHS Discrimination Certification. The July ACF Standard Terms apply effective July 29, 2025, "for awards and funded modifications made on or after this date," and (except when specifically noted) apply to all awards administered by ACF, including "[n]on-discretionary awards," and flow down to subrecipients.

19. CDC has incorporated the HHS Discrimination Certification into its General Terms and Conditions for Non-Research Grants and Cooperative Agreements and its General Terms and Conditions for Research Grants and Cooperative Agreements.

20. The Health Resources and Services Administration (HRSA) revised its General Terms on May 14, 2025, to include the HHS Title IX Certification verbatim. It also revised its General Terms and Conditions, effective July 25, 2025, to include the HHS Discrimination Certification. The revised HRSA General Terms and Conditions, including the HHS Discrimination Certification requirement, "apply to all active awards" administered by HRSA and the flow down to subrecipients.

21. In addition, the Substance Abuse and Mental Health Services Administration (SAMHSA) updated its Standard Terms and Conditions to include the HHS Title IX Certification verbatim, to incorporate the HHS Discrimination Certification, and to include a new condition requiring awardees "to comply with all applicable Executive Orders." The SAMHSA Standard Terms and Conditions, including these requirements, apply to all

discretionary grants awarded by SAMHSA, including all active awards that did not reach their project period end date by October 1, 2024. *Id.* at 1.

**<u>My Organization's and its Members' HHS Grants</u>**

22. My organization has applied for and received a competitive grant from the Rape Prevention and Education: Enhancing Capacity for Sexual Violence Prevention Across State and Territory Sexual Assault Coalitions ("RPE Grant") for the past two years.

23. My organization has used RPE Grant funds for many purposes. For instance, these funds support efforts to prevent sexual violence through a public health approach in Wisconsin. As defined by the NOFO, efforts are focused on building a prevention infrastructure to implement community and societal level prevention strategies to decrease sexual violence and advance health equity.

24. On 06/27/2025, HHS awarded my organization a total of $135,000 through the RPE Grant in FY26. The grant has a period of performance of 06/30/2024 – 06/29/2028 and a budget period of 06/30/2025 through 06/29/2026. The NOFO did not include the new funding conditions, but the NOA indicates that the HHS GPS and CDC Terms and Conditions, which contain the new funding conditions described above, apply to the award.

25. Declining this funding would have a significant detrimental impact on my organization. Without the funding for this grant, there would be no infrastructure for primary prevention to implement efforts at the state level, while also supporting vital prevention efforts throughout the state of Wisconsin. This funding supports over one and a half positions at our agency and one-fifth of our budget. A loss of funding would lead to

layoffs and have a significant impact on our work. With this being a primary source for primary prevention, it would also destroy sexual violence prevention efforts in the state.

26. My organization currently receives, and plans to reapply, for the Preventative Health & Health Services (PHHS) grant from the Center for Disease Control (CDC) for the past at least 15 years. We receive this funding as a pass-through from the State of Wisconsin Department of Health Services (WI-DHS).

27. My organization has used PHHS Grant funds for many purposes. For instance, these funds support educational and healing opportunities for survivors, including through direct support, webinars, and other events. These funds are also vital for my organization to training and technical assistance on a variety of prevention related topics to diverse stakeholders throughout the state. This work aligns with Healthy People 2030, a national initiative to improve health and well-being by implementing strategies for sexual assault prevention and services.

28. On 01/07/2025, the WI-DHS awarded my organization a total of $127,156 through the PHHS in FY25. The grant has a period of performance of 10/01/2023 to 09/30/2025 and a budget period of 10/1/2024 through 09/30/2025. My organization accepted this award on 01/06/2025. The NOFO and NOA did not include the new HHS and CDC funding conditions described above, but our current award is subject to the HHS GPS and CDC Terms and Conditions. We accepted the award on November 18, 2025, for a period of October 1, 2024 through September 30, 2026, in the amount of $123.038. This money is critical to our operations.

29. Declining this funding would have a significant detrimental impact on my organization. The loss of this funding would further deteriorate the vital infrastructure for prevention in

the state. These funds support training and technical assistance to diverse stakeholders in

health, education, public health, and other systems. This is also our primary source of

funding to survivors directly and by offering opportunities for healing and learning. This

funding supports over one and a half positions at our agencies; a loss of funding would

lead to layoffs.

30. My organization's members have received HHS grants.

31. For example, Wisconsin SA Coalition Member Doe 1 receives FVPSA funds through our

"Statewide Domestic Violence Grant" which is administered through our State

Department of Children and Family Services (DCF.). The FVPSA funds are combined

with State funding to make up their entire "Statewide Domestic Violence Grant" which is

administered through the State DCF agency. All our interaction is with this state agency.

    a. On 11/26/24, HHS awarded Wisconsin Member Doe 1 a total of $ 11,475 in

       FVPSA funds through the Statewide Domestic Violence Grant program

       administered through the State Department of Children and Family Services

       (DCF) in FY 2025. This is part of a larger total grant administered by DCF

       (including some state funds). The grant has a period of performance of

       01/01/2025 – 12/31/2025 and a budget period of 01/01/2025 through 12/31/2025.

       They accepted this award on 11/26/2024. The current grant will expire on

       12/31/2025. Wisconsin SA Coalition Member Doe 1 will apply for a continuing

       award in September/October of 2025, for the grant period of 01/01/2025 – 12/31/

       2025. When they receive the continuation award, the HHS GPS will apply.

    b. Declining this funding would have a detrimental impact on the agency. Their

       budget is very tight, and this decrease in funding would result in the agency

having to reduce staff hours, and inevitably less services to victims of domestic violence.

32. Wisconsin SA Coalition Member Doe 2 receives FVPSA funds as a passthrough underneath the Department of Children and Families, through Domestic Violence Services, Shelter Stabilization and Domestic Violence Housing First.  They sign our awards directly through the State of Wisconsin, Department of Children and Families.

   a. On 01/01/2025, State of WI DCF awarded Wisconsin SA Coalition Member Doe 2 a total of $351,539 through the DCF DVHF, DCF DV Services, and DCF Stabilization Grants for FY2025. The grant has a period of performance of 12 months and a budget period of January through December. Wisconsin SA Coalition Member Doe 2 has this award as a yearly continuation grant that will expire in 2026. When that expires, they plan to continue to apply for available funds through DCF.

   b. Declining this funding would have a very significant impact on the organization. Without funding from this grant, they will be forced to consider staff reductions and potential cutbacks to 24/7 services and shelter programs. This would have a direct and harmful effect on the essential services that our county and community partners rely on, as the only victim services organization within the county. This could mean no helpline available for victims seeking immediate safety planning, no trained advocates to respond to law enforcement calls, court hearings, or hospital visits—especially during nights, weekends, and holidays. Victims in crisis may find themselves without a safe place to go or someone to accompany them during forensic exams, interviews, or court proceedings. It could also lead to

15

delays or gaps in restraining order assistance, legal advocacy, and case management.

c.  Community-wide, the absence of this member's services would likely result in increased pressure on already overburdened systems such as law enforcement, emergency rooms, and mental health providers—none of which are equipped to provide the specialized trauma-informed care that our organization offers. In short, without this funding, the safety net for victims of crime and abuse in the region would be severely compromised, leaving survivors without critical support at their most vulnerable moments and undermining the coordinated community response that is vital to public safety and justice.

33. Wisconsin SA Coalition Member Doe 4 receives HHS – FVPSA funding through the Wisconsin Department of Children and Families (DCF) as a DCF-Statewide grant in the amount of $215,000 and a DCF-Children's grant in the amount of $35,000.

a.  On 11/26/2024, HHS awarded Wisconsin SA Coalition Member Doe 4 a total of $35,000 through the DCF Children's grant program in federal FY25. The grant has a performance and budget period of 01/01/2025 – 12/31/2025. They accepted this award on 12/02/2024. Wisconsin SA Coalition Member Doe 4 receives a yearly continuation grant and expects the grant to be renewed for the 01/01/2026 – 12/31/2026 funding cycle in late 2025 for federal FY26. They applied for this continuation funding on 07/09/2025.

b.  On 12/14/2024, HHS awarded Wisconsin SA Coalition Member Doe 4 a total of $215,000 through its DCF Statewide grant program in federal FY25. The grant has a performance and budget period of 01/01/2025 through 12/31/2025. They

accepted this award on December 2, 2024. Wisconsin SA Coalition Member Doe 4 receives a yearly continuation grant and expects the grant to be renewed for the 01/01/2026 – 12/31/2026 funding cycle in late 2025 for federal FY26.

c. Wisconsin SA Coalition Member Doe 4's active FVSPA awards total $250,000. With an estimated operating budget for FY 2026 is approximately $1.4M, these subgrants represent approximately 18% of their agency budget. The loss of DCF funding would have a significant detrimental impact on Wisconsin SA Coalition Member Doe 4's organization. Without these two grants, they would be forced to eliminate two full-time positions and two part-time positions that provide crisis and supportive services to 650-750 people in rural Wisconsin, including children's services, safety planning, crisis counseling, and outreach. Their service area has already experienced three intimate partner violence homicides in the first five months of 2025. As the only victim service agency and emergency shelter for victims of domestic violence in this rural area, the loss of this funding would be catastrophic to the agency and communities.

34. Wisconsin SA Coalition Member Doe 5 receives FVPSA funds as a passthrough from the Department of Children and Families. They sign awards with the State of Wisconsin, Department of Children and Families.

a. On 01/01/2025, HHS awarded Wisconsin SA Coalition Member Doe 5 $37,868 through the FVPSA in FY 2024. The grant has a period of performance of 10/01/2024 – 9/30/2025 and a budget period of 1/1/2025 through 12/31/2025. They accepted this award on 12/02/2024. FVPSA funds are part of a state grant received. The application for the continuation grant is due in October. When

Wisconsin SA Coalition Member Doe 5 receives the continuation award, it is expected that the HHS GPS will apply.

b. Declining this funding would have a very significant detrimental impact on the organization. Without the funding for this grant, Wisconsin SA Coalition Member Doe 5 will have to reduce shelter capacity, meaning fewer victims of domestic violence will have safe shelter to come to. It is very likely that they will have to reduce staff. They only have 18 staff members total, including staff who staff shelter on evenings, weekends, overnights, and holidays. This would be a detriment to the community, who relies on the shelter for victims.

35. Wisconsin SA Coalition Member Doe 6 receives HHS grants, including grants: Teen Pregnancy Prevention (TPP), Personal Responsibility Education Program (PREP), Sexual Risk Avoidance Education (SRAE) and Title V Block Grant Funds. They have also been a recipient of Rape Prevention and Education (RPE). These grants are received as pass-through from the state department of health.

a. Personal Responsibility Education Program (PREP) & Sexual Risk Avoidance Education (SRAE) Joint Contract: On 10/28/24, HHS awarded Wisconsin SA Coalition Member Doe 6 a total of $180,000 through the PREP & SRAE Grant Programs in FY 2024. The grant has a performance and grant period of 10/01/24 – 9/30/25. They accepted this award on 10/28/24. They expect to see annual continuation awards through the length of the federal contract and will reapply when the grant expires.

b. Declining this funding would have a very significant detrimental impact on the organization. Without the funding for this grant, Wisconsin SA Coalition Member

Doe 6 would need to reduce staff and cut programming. Youth ages 14-19 statewide would no longer have access to positive youth development programming and would be denied positive impact from our framework for healthy, connected, and thriving youth.

c. Title V Block Grant Funds: On 02/20/2025, HHS awarded Wisconsin SA Coalition Member Doe 6 a total of $200,000 through the Title V Block Grant Programs in FY 2025. The grant has a performance and budget period of 1/1/25 – 12/31/25. They accepted this award on 02/20/25. They are in the process of applying for Title V Block Grant Funds for the next grant cycle and hope to be awarded funds by January 2026.

d. Declining this funding would have a detrimental impact on Wisconsin SA Coalition Member Doe 6. Without the funding for this grant, they would need to reduce staff and cut programming. Youth ages 14-19 statewide would no longer have access to positive youth development programming and would be denied positive impact from our framework for healthy, connected, and thriving youth.

e. Teen Pregnancy Prevention (TPP): HHS awarded Wisconsin SA Coalition Member Doe 6 a total of $140,000 through the TPP funding in FY 2025. The grant has a performance and grant period of 7/1/2025 - 6/30/2026. Because this is a discretionary grant awarded after April 15, 2025, the new funding conditions in the HHS GPS apply to it. Wisconsin SA Coalition Member Doe 6 needs to accept this award by signing the formal contract from DHS once received, which should be any day now.

f.  Declining this funding would have a very significant detrimental impact on the organization. Without the funding for this grant, they would need to reduce staff and cut programming. Youth ages 14-19 statewide would no longer have access to positive youth development programming and would be denied positive impact from our framework for healthy, connected, and thriving youth.

**HUD's and HHS's New Funding Conditions Place My Organization and its Members in an Untenable Position**

36. Agreeing to the HHS conditions would cause my organization profound harm. The funding conditions are vague, and several could be read to conflict with my organization's core mission and the activities it has undertaken for years in furtherance of that mission and in reliance on HHS. The funding conditions may require my organization to cease engaging in activities that it had previously understood the grants to plainly support. Thus, my organization does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of sexual violence.

37. My organization is concerned about conditions requiring that we certify that we do not operate any programs that violate any applicable Federal antidiscrimination laws, implying that compliance with those antidiscrimination laws is material for False Claims Act Purposes. Although we have always complied with federal antidiscrimination laws, the DEI Executive Order and statements from the DOJ indicate that the government intends to enforce a legally unsupported, new interpretation of federal antidiscrimination law as prohibiting all aspects of programs focused on DEI and DEIA. My organization's

mission is to create social change to end sexual violence. The Wisconsin SA Coalition's Framework further describes the organization's vision as "a world without violence, oppression, and racism where all people honor bodily autonomy and social justice." It is unclear whether my organization's mission and guiding principles violate the certification, and whether my organization could comply with the administration's interpretation of federal antidiscrimination law without adopting a view antithetical to its true beliefs.

38. My organization is also unsure whether it can continue to operate programs that target underserved or marginalized communities. Healthy People 2030, the RPE NOFO, and other guiding documents prioritize addressing social and structural determinants of health to achieve health equity – including addressing inequities related to race. Now, it is unclear whether these programs would fall within the administration's interpretation of federal anti-discrimination law as prohibiting DEI and DEIA programs.

39. For the same reasons, my organization is concerned that it cannot comply with HHS conditions that prohibit the operation of any programs that "advance or promote DEI, DEIA, or discriminatory equity ideology."

40. My organization is also concerned about the HHS GPS condition requiring grantees to certify that they do not engage in, and will not during the term of this award engage in, a "discriminatory prohibited boycott." While none of our activities fall into this category, we are fearful how this condition has been used against organizations similar to ours for making public statements against war and genocide.

41. My member organizations are also concerned about the HUD condition that prohibits using grant funds to "promote" gender ideology. In providing direct client services and

technical assistance, we use partner and clients' preferred pronouns to demonstrate support for people who do not identify with the sex they were assigned at birth, recognize gender identity in providing direct assistance, and accommodate the needs of the LGBTQ+ community. It is unclear whether my organization may continue these practices and activities while complying with the funding condition not to "promot[e] gender ideology."

42. My organization's members are concerned about the HUD conditions that prohibit using grant funds to "promote" "elective abortion." Our members do not provide abortion care, but they do not know what the government may consider to "promote" abortion. Members offer clients information about any healthcare services that they need. When pregnant survivors request abortion care, members provide them with resources on how to seek that care.

43. My organization's members are concerned about the HUD condition providing that use of grant funds and operation of projects assisted with grant funds are governed by "[a]ll current Executive Orders." They do not know what this condition's broad and vague language means for their organizations or how to comply with it, given the many new executive orders that it implicates.

44. The new funding conditions present my organization and its members with an impossible choice. My organization could forgo accepting HHS grant awards and face the direct consequences to my organization's financial health and ongoing operations, and the health and operations of its member organizations, and to those who receive direct services. Or my organization could accept the funding with the conditions and jeopardize

its mission and compliance with statutory or regulatory requirements, and face enormous

risks of litigation and government investigations under the False Claims Act.

45. Additionally, my organization's members would have to fundamentally change their

programming or accept new grants and risk running afoul of various funding conditions

imposed on those grants. For example, member organizations would have to restrict

activities targeting underserved populations in diverse categories, out of fear that those

activities would be considered to violate prohibitions on DEI and DEIA.  They would

need to refrain from making appropriate referrals for healthcare where those referrals

include abortion care. And they would need to restrict activities that recognize and

respect transgender and nonbinary individuals' identities.

46. My organization fears that if it agrees to the new funding conditions, it could face not

only the loss of grant funds, but federal government investigation, private party litigation

under the False Claims Act, and potential liability for not complying. These potential

consequences of seeking a grant subject to the new, vague conditions make my

organization concerned about applying or accepting an award. To mitigate these risks, my

organization would have to change its practices, in many cases contrary to its core values.

**These Funding Conditions Threaten to Harm Domestic Violence and Sexual Assault**

**Victims and Survivors**

47. These funding conditions threaten harm to survivors, programs, and communities

throughout Wisconsin.

48. Conversely, if my organization or its members turned down the funds because of the

conditions, the reduction or outright termination of these services would have devastating

effects on victims of sexual violence and communities.

49. My organization's operations are essential to supporting high quality programs and services that are essential in preventing sexual violence and building healthy communities. The Wisconsin SA Coalition's operations are essential to the network of direct service providers and prevention educators who rely on us for survivor-centered policies and practices, as well as evidence-based strategies for prevention. Without this funding, this prevention infrastructure that begins at the Coalition and permeates throughout the state would be irreparably harmed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2026.

_/s/ Amanda Dotson_____

Amanda Dotson
Co-Executive Director
Wisconsin Coalition Against
Sexual Assault, Inc.