IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*<br><br>*Defendants*. | Case No. 25-cv-342 |

## DECLARATION OF LISA GUILLETTE

I, Lisa Guillette, declare as follows:

**I.   Background**

1.  I am the Executive Director at Foster Forward ("Foster Forward"), a direct service nonprofit organization in Rhode Island that supports youth transitioning out of foster care.

2.  Foster Forward was founded in 1995 and is headquartered in East Providence, Rhode Island. Our mission is to empower lives impacted by foster care. We provide housing, workforce, financial capability, and permanency services to youth and young adults with foster care experience.

3.  Foster Forward operates Your Way Home, which provides a Drop-In Center, transitional housing and rapid rehousing for youth experiencing homelessness; Works Wonders®, our nationally recognized workforce development program; Real Connections, a

mentoring program; ASPIRE, a financial capability program; on-site crisis intervention and well-being support. Foster Forward also provides free clothing, furniture and home supplies for the clients we serve.

4. Foster Forward receives grants from the Department of Housing and Urban Development (HUD). Our organization has an annual budget of approximately $3.5 million. Of that total amount, approximately $520,000 comes from HUD's Continuum of Care Grant Program ("CoC").

II. **HUD's New Funding Conditions**

5. HUD has begun applying new funding conditions on HUD grants that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior years.

6. The Notice of Awards ("NOAs") for the HUD CoC grants provide that the recipient's "use of funds provided under" the agreement and its "operation of projects assisted with" grant funds "are governed by … [a]ll current Executive Orders." The NOAs also include requirements that the recipient: (1) "shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;" (2) "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [The False Claims Act];" (3) "certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;" and (4) "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment."

### III. Foster Forward's HUD Grants

7. Foster Forward has applied for and received a competitive CoC Grant for the past 7 years. We currently have 3 grants directly through HUD.

8. On May 28, 2025, Foster Forward received a Notice of Award (NOA) for a total of $258,744 through the CoC Grant in FY2024. The grant has a performance period of January 1, 2026 through December 31, 2026 and a budget period of January 1, 2026 through December 31, 2026. The NOFO for this award did not include the new funding conditions described above, but the NOA did. After this Court issued a Preliminary Injunction on October 23, 2025, Foster Forward executed the grant award and is now actively drawing down the funds for this grant.

9. Foster Forward has been awarded a Youth Transitional Housing/Rapid Rehousing (YHDP CoC Award) for a total of $183,780. This is a direct HUD grant with a start date of November 1, 2025, and it provides a hybrid housing model combining transitional housing and rapid rehousing to meet the unique needs of vulnerable youth. The NOFO for this award did not include the new HUD funding conditions described above, but the NOA did. After this Court issued a Preliminary Injunction on October 23, 2025, Foster Forward executed the grant award and is now actively drawing down the funds for this grant.

10. Foster Forward has been awarded a Drop-In Center for Youth Experiencing Homelessness (YHDP CoC Award) for a total of $78,905. This is a direct HUD grant with a start date of December 1, 2025, and it offers low-barrier, trauma-informed services for youth experiencing homelessness, including access to basic needs, case management, and housing navigation. The NOFO for this award did not include the new HUD funding conditions described above, but I the NOA did. After this Court issued a Preliminary Injunction on October

23, 2025, Foster Forward executed the grant award and is now actively drawing down the funds for this grant.

11. Foster Forward relies heavily on the CoC Grants to fund critical housing stabilization services for youth experiencing homelessness. These funds support our Your Way Home program, which provides case management, housing navigation and rental assistance for homeless youth ages 18-24, including those exiting foster care, experiencing domestic violence, or aging out of residential placements.

12. Declining the HUD CoC funding would have a significant detrimental impact on our organization and mission. Without this funding, we would be forced to eliminate positions for housing case managers, reduce access to rapid rehousing rental assistance, and turn away young people in urgent need of shelter and support.

13. Declining these funding sources would result in increased homelessness among the youth we serve, exacerbate service gaps across Rhode Island, and force difficult staff layoffs in our housing team.

14. Foster Forward also intends to apply for future HUD CoC grants in the next application cycle, expected in early 2026.

## IV.     **HUD's New Funding Conditions Place Foster Forward in an Untenable Position**

15. Agreeing to HUD's new funding conditions would cause Foster Forward profound harm. The funding conditions are vague, and several could be read to conflict with our core values and the activities we have undertaken for years in furtherance of our mission and in reliance on HUD support. The new language requires us to interpret Executive Orders in legally uncertain ways, increasing risk and uncertainty.

4

16. Foster Forward is concerned about conditions requiring that we certify that we do not operate any programs that violate any applicable Federal antidiscrimination laws, and agreeing that compliance with those antidiscrimination laws is material for False Claims Act purposes. Although we have always complied with federal antidiscrimination laws, the DEI Executive Order and statements from the DOJ indicate that the government intends to enforce a legally unsupported, new interpretation of federal antidiscrimination law as prohibiting all aspects of programs focused on DEI and DEIA. Foster Forward's values are rooted in equity and inclusion, and we explicitly serve youth in need regardless of race, gender, sexual orientation, or immigration status. It is unclear whether Foster Forward's mission and guiding principles violate the certification, and whether we could comply with the administration's interpretation of federal antidiscrimination law without adopting a view antithetical to our true beliefs.

17. Foster Forward is concerned about the HUD condition that prohibits using grant funds to "promote gender ideology." In providing direct services, our staff affirm youth identities, use preferred pronouns, and accommodate trans and nonbinary youth in our housing, workforce, and mentoring programs. It is unclear whether my organization may continue these practices and activities while complying with the funding condition not to "promot[e] gender ideology." Complying with this condition may force us to choose between federal funding and ethical obligations to the youth we serve.

18. We are also concerned about the condition prohibiting use of funds to "promote elective abortion." While we do not provide abortion care, our case managers and peer navigators provide youth with information about all available healthcare options, including reproductive care. The vagueness of this clause could criminalize or defund the act of informing youth about legal medical services.

19. We are concerned about the HUD condition that our use of funds and operation of projects must comply with "all current Executive Orders." This language is sweeping and ambiguous. We do not know what specific requirements are implicated or how to assess compliance with a moving target.

20. These new funding conditions present Foster Forward with an impossible choice. We could forgo accepting the HUD grant award and face the direct consequences to our financial health and our ability to house vulnerable youth. Or we could accept the funding with conditions that may violate our values, conflict with state licensing and professional standards, and face enormous risks of litigation and government investigations under the False Claims Act.

21. Foster Forward fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make my organization concerned about applying or accepting an award. To mitigate those risks, we may be forced to modify our services in ways that are harmful to youth and inconsistent with our trauma-informed, person-centered approach.

V. **These Funding Conditions Threaten to Harm Youth Aging Out of Foster Care**

22. These funding conditions threaten harm to youth with foster care experience, including those aging out of the system, LGBTQ+ youth, youth of color, and immigrant youth. These are the very populations most likely to be homeless and least likely to find housing in the private market. Our services help them stabilize, heal, and become self-sufficient.

23. Conversely, if Foster Forward turns down the funding due to the conditions, we will be forced to reduce or eliminate critical housing supports. The loss of services would push more youth into homelessness, survival sex, or unsafe conditions.

24. Foster Forward's programs have helped hundreds of youth find and sustain housing. We are one of the few providers in Rhode Island with deep experience serving this population. Without adequate funding and legal clarity, we cannot meet the demand or fulfill our mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 4, 2026.

Lisa Guillette
Executive Director
Foster Forward