IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR.,, *et al.*<br><br>*Defendants*. | Case No. 1:25-cv-342 |

**DECLARATION OF DAVID LEE**

I, David Lee, declare as follows:

**I.     Background**

1.     I am the Deputy Director at ValorUS (VALOR), a non-profit organization serving as California's sexual assault coalition.

2.     VALOR was founded in 1980 and is headquartered in Sacramento, California. It is both a state sexual assault coalition and a direct service provider committed to advancing equity and ending sexual violence. Through leadership, prevention, and advocacy, VALOR pursues a world free from violence where the dignity of every person is valued and respected.

3.     VALOR provides training and technical assistance to California's 65 rape crisis centers and other organizations addressing the needs of sexual assault survivors and working to prevent sexual violence. In California, VALOR also supports programs to address sexual

1

violence for people with developmental disabilities, supporting implementation of Prison Rape Elimination Action (PREA) in prisons, and providing legal services to sexual assault survivors. In addition, VALOR is a national technical assistance provider on violence prevention, restorative practices and leadership development.

4. My organization receives grants from the Department of Health and Human Services (HHS). My organization has an annual budget of roughly $4.2 million. Of that total amount approximately $780,000 comes from HHS grants, including subcontracts.

II. **My Organization's Member Organizations**

5. VALOR is a membership organization with approximately 100 member agencies. Members fall into one of two categories. The first category of member encompasses 66 California Rape Crisis Centers, which provide services funded by the California Office of Emergency Services Rape Crisis Program. Rape Crisis Centers are voting members of VALOR. The second category of member includes any other agency addressing issues of sexual assault and individuals who are interested in, sensitive to, and supportive of VALOR's work and the needs of sexual assault victims. These members are not voting members, but they are encouraged to engage in the business of the organization and are eligible for nomination to the Board of Directors.

6. VALOR's membership includes a member that is being identified for purposes of this lawsuit as "VALOR Member Doe 1," which supports survivors of Domestic Violence, Sexual Assault, and Human Trafficking in one California county; another member identified for purposes of this lawsuit as "VALOR Member Doe 2," which provides services that support survivors of sexual assault and intimate partner violence in one California county; a member that is being identified for purposes of this lawsuit as "VALOR Member Doe 3," which offers

healing-centered services, education, and community engagement to prevent and respond to domestic and sexual violence in two California counties.

7. Members of my organization receive grants from HHS and HUD.

### III. HUD's New Funding Conditions

8. HUD has begun applying new funding conditions on HUD grants that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior years.

9. The NOAs for the HUD CoC grants provide that the recipient's "use of funds provided under" the agreement and its "operation of projects assisted with" grant funds "are governed by … [a]ll current Executive Orders." The NOAs also include requirements that the recipient: (1) "shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;" (2) "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [The False Claims Act];" (3) "certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;" and (4) "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment."

10. I understand that HUD has a general, agency-wide policy of requiring compliance with these Executive Orders, has updated its standard Applicant and Recipient Assurances and Certifications to require applicants grantees to certify that they "[w]ill not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal antidiscrimination laws," and that HUD's Office of Community

3

Planning and Development (CPD), which administers the Continuum of Care (CoC) CoC, Community Development Block Grant (CDBG), Emergency Solutions Grant (ESG), HOME Investment Partnership Program (HOME), and Housing Opportunities for Persons With AIDS (HOPWA) programs, among others, issued guidance announcing that it will attach new conditions substantially identical to the CoC Grant Conditions to Fiscal Year 2025 agreements governing all CPD-administered grants.

### IV.     My Organization's and its Members' HUD Grants

10.  My organization's members have received HUD grants, including grants under the CoC Grant Program, the ESG program, and the CDBG Program. Our members receive HUD funding through pass-through organizations, such as local county governments.

11.  For example, Doe 1 receives ESG and CDBG program grants. Member Doe 3 receives CoC grants.

12.  On July 1, 2024, HUD awarded Member Doe 1 a total of $26,830 through the Emergency Solution Grants (ESG) as a pass through from their county government. The grant has a period of performance of July 1, 2024 through June 30, 2026 and a budget period of July 1, 2024 through June 30, 2026. Member Doe 1 accepted this award on June 10, 2024. The NOFO and agreement with the agency did not include new HUD funding conditions but, as described above, I am aware that HUD enforces the CoC funding conditions for ESG grants.

13.  On May 13, 2025, HUD awarded Member Doe 1 a total of $10,000 through the Community Development Block Grant (CDBG) program, as a pass through from a City in their county. The grant has a period of performance of July 1, 2025 through June 30, 2026 and a budget period of July 1, 2025 through June 30, 2026. Member Doe 1 accepted this award on May 23, 2025. The NOFO and agreement with the City did not include new HUD funding conditions

but, as described above, I am aware that HUD enforces the CoC funding conditions for CDBG grants.

14. Doe Member 1 applied for ESG and CDBG grant funding in response to two NOFOs that closed on July 8, 2025. Those grants were conditionally awarded in fall 2025 and fully contracted for a period beginning in fall 2025. I am aware that HUD will enforce the CoC funding conditions for these grants.

15. Declining this funding would have a very significant detrimental impact on my organization's members. Without HUD funding, Doe Member 1 would need to cut staff hours for two employees. The ESG grant funds an employee who supervises staff and answers the 24 hour crisis phone line. The CDBG grant funds a second employee who manages Doe Member 1's satellite office and provides direct services to clients, including restraining order assistance. Reducing hours for these employees would result in a reduction of quality of service at Doe Member 1's domestic violence shelter and longer wait times for service at Doe Member 1's satellite office, potentially eliminating restraining order assistance at that location entirely. When someone needs an emergency restraining order, the wait time matters.

16. On June 27, 2025, HUD awarded Doe Member 3 a total of $125,151 in grants under the CoC Grant program. The NOA included the new HUD CoC grant conditions. The grant has a period of performance of October 1, 2025 through September 30, 2026 and a budget period of October 1, 2025 through September 30, 2026. Member Doe 3 had no choice but to accept the award.

17. Doe Member 3 relies on the CoC Grant program to support its rapid rehousing and transitional housing programs. Doe Member 3 serves 49 individuals through their rapid rehousing program. An additional 6 survivors receive support through their transitional housing

program. Without CoC funding, these 55 survivors would likely lose access to safe, stable housing, with no clear alternative source of support to replace what HUD currently provides. Many of these individuals would face an increased risk of homelessness or be forced to return to (or stay in) abusive situations. Additionally, these funds not only cover rental assistance but also the advocacy services necessary to support survivors on their path to independence and recovery. Without the HUD CoC funds, survivors of violence likely will be homeless and at risk of addiction relapse.

18. My organization's members also intend to apply for the following upcoming HUD Grants: CDBG, CoC and ESG within their respective counties.

V. **HHS's New Funding Conditions**

19. In July 2025, HHS issued a new revised Grants Policy Statement (July GPS) that imposed new conditions on grantees: It required that, "[b]y applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams," and applies to awards and modifications adding funding made on or after April 16, 2025.[1]

20. In August, HHS revised its GPS again, effective October 1, 2025 (October GPS), which includes the same HHS Discrimination Certification and applies to awards and modifications that add funding made on or after October 1, 2025.

21. The October HHS GPS also includes a requirement that grantees "certif[y]" that they are "compliant with Title IX of the Education Amendments of 1972 …, including the

---

[1] In April of 2025, the new HHS revised its Grants Policy Statement (GPS) to impose new conditions on grantees prohibiting the operation of "DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws." The July GPS replaced the April GPS.

requirements set forth in [the "Gender Ideology" Order], and Title VI of the Civil Rights Act of 1964" and that they "will remain compliant for the duration of the Agreement." This condition also requires covered recipients to "certify" that this requirement is a "material term[] of the Agreement," that "[p]ayments under the Agreement are predicated on compliance" with Title IX and Title VI and that the recipient "therefore … is not eligible for funding … absent compliance with" those requirements, and that the recipient "acknowledges that this certification reflects a change in the government's position regarding the materiality" of those requirements. A recipient must also certify that it "acknowledges that a knowing false statement relating to Recipient's compliance with the above requirements and/or eligibility for the Agreement may subject Recipient to liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001."

22.   In May 2025, HHS's Administration for Children and Families (ACF) updated its Standard Terms to adopt a new certification requirement substantially similar to the HHS Title IX Certification, which is identical to the HHS Title IX Certification except that it does not explicitly refer to the "Gender Ideology" Executive Order. In July 2025, ACF also updated its Standard Terms to make the same change and adopt the HHS Discrimination Certification. The July ACF Standard Terms apply effective July 29, 2025, "for awards and funded modifications made on or after this date," and (except when specifically noted) apply to all awards administered by ACF, including "[n]on-discretionary awards," and flow down to subrecipients.

23.   CDC has incorporated the HHS Discrimination Certification into its General Terms and Conditions for Non-Research Grants and Cooperative Agreements and its General Terms and Conditions for Research Grants and Cooperative Agreements.

24. The Health Resources and Services Administration (HRSA) revised its General Terms on May 14, 2025, to include the HHS Title IX Certification verbatim. It also revised its General Terms and Conditions, effective July 25, 2025, to include the HHS Discrimination Certification. The revised HRSA General Terms and Conditions, including the HHS Discrimination Certification requirement, "apply to all active awards" administered by HRSA and the flow down to subrecipients.

25. In addition, the Substance Abuse and Mental Health Services Administration (SAMHSA) updated its Standard Terms and Conditions to include the HHS Title IX Certification verbatim, to incorporate the HHS Discrimination Certification, and to include a new condition requiring awardees "to comply with all applicable Executive Orders." The SAMHSA Standard Terms and Conditions, including these requirements, apply to all discretionary grants awarded by SAMHSA, including all active awards that did not reach their project period end date by October 1, 2024. *Id.* at 1.

**My Organization's and its Members' HHS Grants**

26. My organization has applied for and received a competitive grant from the Center for Disease Control (CDC) for the Rape Prevention and Education program for the past 2 years.

27. On June 27, 2025, HHS awarded my organization a total of $135,000 through the Rape Prevention and Education: Enhancing Capacity for Sexual Violence Prevention by State Sexual Assault Coalition grant ("RPE Coalition Grant") in FY2025. The grant has a period of performance of June 30, 2025 through June 29, 2026 and a budget period of June 30, 2025 through June 29, 2026. The NOFO did not include the new funding conditions, but the NOA indicates that the HHS GPS and CDC Terms and Conditions, which contains the new funding

conditions described above, apply to the award. My organization had no choice but to draw down these funds. CDC sent a new NOFO to continue funding, due March 23, 2026.

28. My organization has used RPE Coalition Grant funds for many purposes. For instance, these funds support VALOR collaboration with the state sexual assault prevention action plan, disseminating materials about prevention and collaborate with the state health department in statewide sexual violence prevention efforts.

29. Declining the RPE Coalition Grant funding would have a very significant detrimental impact on my organization. The loss of the RPE Coalition grant would result in a loss of $135,000 and result in reducing staff. VALOR would no longer be able to fund its participation as the only sexual violence prevention program in California. The RPE Coalition Grant funds support VALOR to provide training and technical assistance to organizations in California providing sexual assault services.

30. On March 7, 2025, CDC awarded my organization a total of $345,000 through the E-Learning Collaborative for Sexual Violence and Intimate Partner Violence Prevention in FY2025. The grant has a period of performance of February 1, 2025 through January 31, 2031 and a budget period of February 1, 2025 through January 31, 2031. My organization accepted this award upon the first draw down of funds on April 25, 2025. The NOFO and NOA did not include the new HHS and CDC funding conditions described above, but I expect that the next award will be subject to the HHS GPS and CDC Terms and Conditions. VALOR was awarded for a 5 year cooperative agreement where we submit non-competitive continuation each year. We completed that continuation application in late 2025 and received a new NOA on February 4, 2026.

31.     Declining or limiting this funding would have a very significant detrimental impact on my organization. The loss of the CDC E-Learning Collaborative for Integrated Violence Prevention, would result in a loss of $345,00 requiring a reduction of over 2.0 FTE of staffing and discontinuing our national prevention activities. Each year, with this grant VALOR provides web conferences, podcasts, blogs and social media to advance violence prevention efforts. The eLearning collaborative disseminates new research and provides violence prevention practitioners with strategies to support implementation throughout the country. Without the funding for this grant, VALOR will cease to provide CDC violence prevention grantees and other violence prevention practitioners the training and technical assistance to strengthen violence prevention efforts.

32.     My organization's members have received HHS grants, including grants through the CDC under the RPE Program and FVPSA through the Domestic Violence Assistance Program (DVAP). Members receive CDC RPE Program funding as passed through the California Department of Public Health (CDPH). 15 VALOR members received RPE funding from CDPH with 5 year awards for the period of February 1, 2024 to January 31, 2029. Members received HHS funding as passed through the California Governor Office of Emergency Services (Cal OES). Approximately 39 VALOR members receive Cal OES Domestic Violence Assistance Program (DVAP) using HHS FVPS funds each year. Recipients must submit a continuation application each year in the summer.

33.     For example, Cal OES awarded VALOR Doe Member 1 a total of $100,398 through the Cal OES Domestic Violence Assistance Program (DVAP) using HHS FVPS funds in FY2024-2025. The grant had a period of performance of October 1, 2024 to September 30, 2025 and a budget period for the HHS FVPS portion of the funds from October 1, 2024 through July

10

31, 2025. VALOR Doe Member 1 accepted this award on August 26, 2024. VALOR Doe Member 1 submits its yearly continuation grant application each year during the summer and received the continuation award starting October 1, 2025. Additionally, VALOR Doe Member 1 received $ 208,942 through its county government's Domestic Violence Welfare to Work program using HHS Temporary Assistance for Needy Families funds in FY2024-2025. The grant has a period of performance of July 1, 2025 to June 30, 2026 and a budget period of July 1, 2025 through June 30, 2026. VALOR Doe Member 1 accepted this award on April 9, 2025. VALOR Doe Member 1 renews its contract with the county for these funds each year.

34. Finally, CalOES awarded VALOR Doe Member 1 a total of $ 94,445 through the Cal OES Intimate Partner Violence Prevention Program using HHS FVPS funds in FY2024-2025. The grant had a period of performance of January 1, 2025 to December 31, 2025 and the HHS FVPS funds had a budget period of January 1, 2025 - July 31, 2025. VALOR Doe Member 1 accepted this award on November 4, 2024. VALOR Doe Member 1 submitted a yearly continuation grant application and is now in the fourth year of a five-year grant, through the funding period of January 1, 2026 through December 31, 2026.

35. Declining any of these funds would have a very significant detrimental impact on VALOR Doe Member 1. The organization has already lost over 200 planned staffing hours from July 2024 to present, impacting its ability to serve the needs of our community. Losing any HHS grant would mean eliminating more positions or whole departments, impacting shelter clients, crisis line coverage, and crisis intervention and advocacy services at multiple offices. VALOR Doe Member 1 would not survive without the DVAP grants. without the DVAP grants.

36. VALOR Doe Member 1 received HHS Community-Based Child Abuse Prevention Grants (CB-Cap) for $89,708 from their county for the grant period of July 1, 2025 to

June 30, 2027 and the budget period of July 1, 2025 to June 30, 2027. The grant was accepted on May 12, 2025. CB Cap provides school-based prevention programming at elementary school level, mostly through after school programs, and intervention programming with known child survivors. Without this funding, VALOR Doe Member 1 would have to eliminate this program.

37. VALOR Member Doe 2 received a total of $850,00 through the Rape Prevention Education program from California Department of Public Health using HHS RPE funds in FY24-25. The grant has a period of performance of February 1, 2024 to January 31, 2029 and a budget period of February 1, 2024 through January 31, 2029. Member Doe 2 accepted this award on April 29, 2024. Without this funding, Member Doe 2 will be unable to provide sexual assault prevention services in their county. Member Doe 2 implements a community based sexual violence prevention program that includes youth and adult community leaders meetings, hosting sexual violence prevention orientation training for organizations and their leaders, and in partnership with community based organizations, provides multiple workshops about various sexual violence prevention topics and implementations of sexual violence prevention such as community-led campaigns, policies, practices, protocols designed to prevent sexual violence. If VALOR Doe Member 2 loses this funding, over 1.2 FTE staff positions would be eliminated as would support for other community organizations.

38. Cal OES awarded VALOR Member Doe 2 $97,392 in HHS FVPS funds as a portion of their Cal OES Domestic Violence Assistance Program total grant award for FY2024-2025. The grant had a period of performance of October 1, 2024 to September 30, 2025 and a budget period of October 1, 2024 through September 30, 2025. Member Doe 2 submits yearly continuation grant applications each year during the summer and Member Doe 2 started its next continuation of this award in the fall 2025.

39. Services provided under DVAP include the following: 24-Hour Crisis Hotline, individual and peer counseling, operating business centers, emergency shelters for survivors and their children, providing emergency food and clothing, emergency response to calls from law enforcement, medical advocacy and emergency response, transportation for survivors, children counseling, criminal justice and social service advocacy, legal assistance [referrals], court accompaniment, community resource and referral, household establishment assistance, children's programs, and transitional housing assistance. These are all things required by the grant to operate under this funding and are the large majority of VALOR Doe Member 2's offered services. DVAP is one of our single largest funding sources.

40. Cal OES awarded VALOR Member Doe 3 a total of $97,392 in HHS FVPS funds as a portion of their Cal OES Domestic Violence Assistance Program total grant award for FY2024-2025. The grant had a period of performance of October 1, 2024 to September 30, 2025 and a budget period of October 1, 2024 through September 30, 2025. VALOR Doe Member 3 submits yearly continuation grant applications each year during the summer and Member Doe 3 started its next continuation award in the fall 2025.

41. Services provided under DVAP include the following: 24-Hour Crisis Hotline, individual and peer counseling, operating business centers, emergency shelters for survivors and their children, providing emergency food and clothing, emergency response to calls from law enforcement, medical advocacy and emergency response, transportation for survivors, children counseling, criminal justice and social service advocacy, legal assistance (referrals), court accompaniment, community resource and referral, household establishment assistance, children's programs, and transitional housing assistance. These are all things required by the grant to operate under this funding. DVAP is one of VALOR Doe Member 3's primary funding sources.

42. Declining any of these funds would have a very significant detrimental impact on Partnership Doe Member 3. Losing any of this funding could impact emergency shelter services, crisis line coverage, and crisis intervention and advocacy services.

**HUD's and HHS's New Funding Conditions Place My Organization and its Members in an Untenable Position**

43. Agreeing to the HUD and HHS conditions would cause my organization and its members profound harm. The funding conditions are vague, and several could be read to conflict with my organization's core mission and the activities it has undertaken for years in furtherance of that mission and in reliance on HUD and HHS grants. The funding conditions may require my organization to cease engaging in activities that it had previously understood the grants to plainly support. Thus, my organization does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of sexual violence.

44. My organization and our members are concerned about conditions requiring that we certify that we do not operate any programs that violate any applicable Federal antidiscrimination laws, implying that compliance with those antidiscrimination laws is material for False Claims Act Purposes. Although we have always complied with federal antidiscrimination laws, the DEI Executive Order and statements from the DOJ indicate that the government intends to enforce a legally unsupported, new interpretation of federal antidiscrimination law as prohibiting all aspects of programs focused on DEI and DEIA. My organization's mission is "Preventing and ending sexual violence by advancing equity and eradicating oppression." It is unclear whether my organization's mission and guiding principles violate the certification, and whether my organization could comply with the administration's

14

interpretation of federal antidiscrimination law without adopting a view antithetical to its true beliefs.

45. My organization and our members are also unsure whether it can continue to operate programs that target underserved or marginalized communities. Now, it is unclear whether these programs would fall within the administration's interpretation of federal antidiscrimination law as prohibiting DEI and DEIA programs

46. For the same reasons, my organization and our members are concerned that it cannot comply with HHS conditions that prohibit the operation of any programs that "advance or promote DEI, DEIA, or discriminatory equity ideology."

47. The new funding conditions present my organization and its members with an impossible choice. We could forgo accepting HHS grant awards and face the direct consequences to my organization's financial health and ongoing operations, and the health and operations of its member organizations including possible closure, and to those who receive direct services. Or my organization could accept the funding with the conditions and jeopardize its mission and compliance with statutory or regulatory requirements, and face enormous risks of litigation and government investigations under the False Claims Act.

48. Additionally, my organization's members may have to fundamentally change their programming or accept new grants and risk running afoul of various funding conditions imposed on those grants.

49. My organization and our members fear that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make my

organization concerned about applying or accepting an award. To mitigate these risks, my organization would have to change its practices, in many cases contrary to its core values.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2026

David Lee
Deputy Director
ValorUS
