UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, et al., Plaintiffs, v. ROBERT F. KENNEDY, JR. in his official capacity as Secretary of the United States Department of Health and Human Services, et al., Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 25-cv-342-MRD-PAS |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

## I.    INTRODUCTION

On July 21, 2025, twenty-two non-profit coalitions and organizations that receive federal grant money to help support survivors of domestic violence and sexual assault as well as members of society who are unhoused or without stable housing (hereinafter the "Plaintiffs"), sued the United States Departments of Health and Human Services ("HHS") and Housing and Urban Development ("HUD") as well as various administrators and subagencies who fall under and within these agencies (hereinafter the "Defendants").[1] ECF No. 1.  According to the Plaintiffs (all grantees), the Defendants unlawfully sprung new conditions for receiving grant awards on them

---

[1] The Plaintiffs filed an Amended Complaint on September 15, 2025.  ECF No. 60.

(the "New Conditions") in violation of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706, and the United States Constitution.[2]  *See generally id.*

As the Plaintiffs see it, the New Conditions and the accompanying required certifications constitute an unlawful attempt by the Defendants to compel compliance with sweeping changes imposed by Executive Orders ("E.O.s") aimed at eliminating programs that are perceived as promoting gender ideology; diversity, equity, and inclusion; elective abortions; and antidiscrimination.  One of the New Conditions enacted by HUD, for example, requires "'Recipients of Federal Awards [to] comply with applicable existing and future Executive Orders, as advised by the Department, including but not limited to' a list of nine executive orders."  ECF No. 96-1 at 70. Regarding specific E.O.s, HUD now forbids these grant Recipients from using the funds to promote "gender ideology" as is defined in the E.O. titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government."  *Id.*  In response to the E.O. dealing with diversity, equity, and inclusion, many of the agencies within HHS require Recipients to certify that "[b]y applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams.  Recipients are responsible for ensuring subrecipients, contractors, and partners also comply."

---

[2] For the purpose of the instant Memorandum and Order, the Court assumes the reader's familiarity with this case's relevant factual and procedural background. Accordingly, here it only briefly summarizes the relevant status of this case and describes generally the New Conditions enacted by the Defendants, as outlined in the Appendix supplied by the Plaintiffs.  *See* ECF No. 96-1 at 70-74.

2

*Id.* at 71.   The additional New Conditions demand similar concessions from Recipients, including the Plaintiffs.  *See id.* at 70-72.

By requiring Recipients to certify compliance with the implicated E.O.s, the New Conditions also expose grantees to liability under the False Claims Act ("FCA").  *See id.* at 73.  The Plaintiffs assert that the Defendants have "weaponized" the FCA to force the Plaintiffs into compliance with the New Conditions, even those that are "vague and ill-defined," for fear of costly civil litigation and exposure to liability and/or criminal penalties.  *Id.* at 11, 15, 30.  Consequently, the Plaintiffs believe that the New Conditions force them to change their core activities, programming, and missions to avoid these consequences.  *Id.*

On October 23, 2025, this Court issued a preliminary injunction in this case temporarily prohibiting implementation and enforcement of the New Conditions.[3]  *See* ECF No. 77.  Now before the Court are the parties' cross-motions for summary judgment.  ECF No. 96, 98.  For Plaintiffs' part, they request that this Court:

- "[D]eclare unlawful, vacate, and set aside the New Conditions;"

- "[P]ermanently enjoin Defendants and anyone acting in concert or participation with them from attempting to enforce any New Condition in any agreement that a grantee already signed or from otherwise treating any such New Condition as effective;"

---

[3] The Plaintiffs were originally granted a preliminary injunction on October 10, 2025.  ECF No. 72.  However, upon the Plaintiffs' request for a clarified Order, the Court issued the operative amended preliminary injunction on October 23, 2025.  ECF No. 77.

- "[P]ermanently enjoin Defendants and anyone acting in concert or participation with them from imposing or enforcing the New Conditions or any substantially similar conditions via any new agency action."

ECF No. 96.  The Defendants seek a judgment in their favor on the basis that the New Conditions "are authorized by statutes, consistent with existing law, procedurally proper, and constitutionally sound."  ECF No. 98 at 11.  For the reasons explained below, the Court grants the Plaintiffs' motion and denies the Defendants' motion.

## II.    LEGAL STANDARD

Typically, "[a] grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (quoting *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017)).  "On cross-motions for summary judgment, each motion is reviewed separately, drawing facts and inferences in favor of the non-moving party."  *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 977 F.3d 69, 72 (1st Cir. 2020).  However, a motion for summary judgment implicating the APA is reviewed under a different standard.  *See Boston Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016).  The APA governs the processes by which federal administrative agencies propose and establish regulations, ensuring transparency and accountability in government actions.  *See* 5 U.S.C. §§ 551-559.  A motion for summary judgment brought in the APA context "is simply a vehicle to tee up a case for judicial review and, thus, an

4

inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action" violates the statute. *Boston Redevelopment Auth.*, 838 F.3d at 47. The Court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Nat'l Lab. Rels. Bd. v. Beverly Enters. Mass., Inc.*, 174 F.3d 13, 23 (1st Cir. 1999) (quoting 5 U.S.C. § 706(2)(A)). "The burden is on the party challenging the agency decision to show that the arbitrary and capricious standard has been met." *Bluestone Env't Grp., Inc. v. Zapisek*, No. 3:21-cv-30056-MGM, 2022 WL 16857173, at *4 (D. Mass. Nov. 10, 2022). "It is a bedrock principle of administrative law that a court reviewing agency action may consider only the agency's explanation given at the time the relevant decision was made, as opposed to its post hoc rationale." *Melone v. Coit*, 100 F.4th 21, 31 (1st Cir. 2024).

## III. DISCUSSION

The Plaintiffs assert that they are entitled to judgment as a matter of law on the claims they bring under the APA as well as under the Constitution. Because the Court finds that the Plaintiffs have brought successful APA claims, it need not reach the constitutional issues raised by the Plaintiffs. *See Vaquería Tres Monjitas, Inc. v. Pagan*, 748 F.3d 21, 26 (1st Cir. 2014) (stating "federal courts are not to reach constitutional issues where alternative grounds for resolution are available") (quoting *Am. Civil Liberties Union v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013)). Accordingly, the Court's discussion will focus on addressing the claims Plaintiffs assert under the APA, the Plaintiffs' request that the Court vacate the New

5

Conditions acknowledgment and certification requirements, and the Plaintiffs' request for a permanent injunction.

### A. APA

The Plaintiffs argue that, by enacting the New Conditions, the Defendants acted in an arbitrary and capricious manner, and thus the New Conditions must be set aside under the APA.[4]  ECF No. 96-1 at 43-48.  In their defense, the Defendants posit that they had no obligation to explain their rationale for enacting the New Conditions, as they "reinforce [] obligations [already enshrined in federal law] and ensure that federal funds are used in a manner consistent with statutory purposes." ECF No. 98 at 30.  Relying on Ninth Circuit precedent, Defendants continue that "[a]gencies have not typically been compelled to provide a more extensive explanation when establishing funding conditions or setting priorities.  Rather, an agency's action must be upheld if 'its path may reasonably be discerned.'"  *Id.* (quoting *City of Los Angeles v. Barr*, 929 F.3d 1163, 1181 (9th Cir. 2019) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

"The APA requires a rational connection between the facts, the agency's rationale, and the ultimate decision."  *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 55 (D.D.C. 2025).  It "embodies a basic presumption of judicial review," and "instructs reviewing courts to set aside agency action that is

---

[4] The Plaintiffs also argue that the New Conditions must be set aside under the APA because they are contrary to law and the Defendants exceeded their statutory authority and violated the Constitution in enacting them.  ECF No. 96-1 at 38.  Because Plaintiffs' APA claim may be resolved on the arbitrary and capricious basis, the Court declines to address these arguments.

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Dep't of Com. v. New York,* 588 U.S. 752, 771 (2019) (cleaned up) (citing 5 U.S.C. § 706(2)(A)). An agency action is arbitrary or capricious "if it is not 'reasonable and reasonably explained.'" *Ohio v. E.P.A,* 603 U.S. 279, 292 (2024) (quoting *F.C.C. v. Prometheus Radio Project,* 592 U.S. 414, 423 (2021)). "[W]here the agency has failed to provide even [a] minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 221 (2016). The First Circuit has instructed that a decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could be ascribed to a difference in view or the product of agency expertise." *Craker v. Drug Enf't Admin.,* 714 F.3d 17, 26 (1st Cir. 2013).

Here, Plaintiffs contend that the New Conditions are arbitrary and capricious because "[f]or both agencies, the record provides no explanation [for the New Conditions' enactment] other than that they were following executive orders." ECF No. 96-1 at 44. The Plaintiffs take issue with this sole justification. *Id.* The Defendants counter that "[t]here is nothing arbitrary or capricious about requiring federal grantees to comply with federal antidiscrimination laws that already bind them—or to certify that they are doing so." ECF No. 98 at 29. Thus, the Defendants maintain that the New Conditions just reinforce statutory obligations and ensure that grantees used federal funds in a manner consistent with federal law. *Id.* at 30.

7

As Defendants see it, they were not required to provide a fulsome explanation of the process by which the New Conditions were adopted beyond what is reflected in the Administrative Records before the Court.  *Id.*

Defendants' position is unpersuasive.  While agencies are free to change their policies, it is well established law that they must "'articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made.'"  *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The Administrative Records submitted by both HUD and HHS offer no explanation or process by which the New Conditions were enacted beyond statements suggesting they were executed for the purpose of aligning with the executive branch's E.O.'s.  *See* ECF Nos. 93, 94.  For example, the HUD Administrative Record provides that it imposed its various New Conditions to align with the Administration's E.O.  ECF No. 94-3 at 3, 7, 36, 105, 110, 119, 126.  The HHS Administrative Record similarly signals that the New Conditions require compliance with the Administration's new E.O.s centered on DEI and gender ideology.  *See* ECF No. 93-3 at 330-31, 365, 411, 434, 951, 957, 975, 983-84, 995, 1001, 1024-25, 1061-62.  This is not enough.  Mere compliance with an executive order does not satisfy the APA's demand for a showing of reasoned decision making.  *See, e.g., Woonasquatucket River Watershed Council v. USDA*, 778 F. Supp. 3d 440, 471 (D.R.I. 2025) ("an agency cannot avert the 'arbitrary and capricious' analysis by simply deferring to the relevant EO."), *aff'd on*

*this basis and remanded on other grounds*, No. 25-1428, 2026 WL 2279789 (1st Cir. May 1, 2025); *see also R.I. Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 70 (D.R.I. 2025). Without more, this Court cannot "ensure[] that the [Defendants] ha[ve] acted within a zone of reasonableness and, in particular, ha[ve] reasonably considered the relevant issues and reasonably explained the[ir] decision." *Fed. Commc'ns Comm'n*, 592 U.S. at 423.

Furthermore, the Plaintiffs assert that the Defendants disregarded important reliance interests of the grantees and the individuals they serve. ECF No. 99 at 13. "When an agency suddenly changes course, it must recognize 'that longstanding policies may have engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). Failure to do so renders an agency action arbitrary and capricious. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here, there is no indication from the Defendants that they considered the Plaintiffs' reliance interests on the grant conditions of the previous grants when the Defendants imposed the New Conditions. The Defendants have neglected to respond to the Plaintiffs' argument that the New Conditions "jeopardize the 'serious reliance interests' of grantees and the members of the public they serve." ECF No. 96-1 at 47 (citing *Regents of the Univ. of Cal.*, 591 U.S. at 30). Further, the Administrative Records provided by HHS and HUD do not include any documentation that indicates that the Defendants considered any of the Plaintiffs' reliance on the previously existing conditions. And, while the Plaintiffs fail to brief any specific reliance

9

interests affected by the New Conditions beyond citing generally to several declarations submitted with their papers, ECF No. 96-1 at 48, the Defendants nonetheless maintain a responsibility to take into account serious reliance interests of their grantees when changing their existing policies.[5] *See Fox Television Stations, Inc.*, 556 U.S. at 515 (2009); *see also Regents of the Univ. of Cal.*, 591 U.S. at 30. Standing alone, this failure is sufficient to find that the Defendants acted in an arbitrary and capricious manner when enacting the New Conditions. *Id.*

Lastly, an agency decision is arbitrary and capricious if the agency neglects to regard an "important aspect of the problem." *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 33 (1st Cir. 2026). In support of their motion for summary judgment, the Plaintiffs provide a plethora of "aspects of the problem" the Defendants ignored when enacting the New Conditions. *See* ECF No. 96-1 at 46-48. For example, the Plaintiffs indicate that "HUD [failed to] consider or explain how a grantee could possibly comply with the 'Gender Ideology' Condition [which requires compliance with the Gender Ideology

---

[5] The declarations cited by the Plaintiffs in this section of their brief provide some insight into the specific reliance interests of the identified grantees. *See* ECF No. 96-11 ¶¶ 20-21; ECF No. 96-17, ¶ 21; ECF No. 19-20 ¶¶ 22-23. For example, the Chief Executive Officer at the Pennsylvania Coalition Against Domestic Violence (PCADV, or Pennsylvania Coalition) shares that "[b]eing forced to decline this funding would have a detrimental impact on Member Doe 1, and it would be forced to rebrand, strategize, and fundamentally change its mission, values, and approach to serving survivors." ECF No. 96-11 ¶ 20. She continues that a member-organization would be "required to dismantle all of its efforts to advance diversity, equity, inclusion, and accessibility (DEI/DEIA)," which includes "staff training, inclusive hiring practices, culturally specific programming, and public language that affirms its values. This is not a compliance tweak; it is a demand to erase foundational principles that define the organization's approach to survivor care and staff wellbeing." *Id.* ¶ 21.

E.O.] without violating [HUD's own regulations] requiring grantees to serve individuals in accordance with their gender identity." ECF No. 96-1 at 46. The Plaintiffs also point out that the Defendants "failed to consider how grantees would struggle to understand their obligations under the vague conditions." *Id.* at 47.

The Defendants, for their part, fail to address this issue in their response or cross-motion, *see* ECF Nos. 98, 100, and have not demonstrated that they considered "important aspect[s] of the problem" when enacting the New Conditions. *Am. Hosp. Ass'n*, 164 F.4th at 33; *see also Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). The Defendants' lack of demonstrated consideration of the difficulties the Plaintiffs would face in executing and adhering to the New Conditions is another basis for the Court's conclusion that the implementation of the New Conditions was arbitrary and capricious and thus in violation of the APA. *See Craker*, 714 F.3d at 26.

In sum, the Court is satisfied that the Plaintiffs have demonstrated that the New Conditions are arbitrary and capricious because the Defendants failed to reasonably support their decision to enact them beyond citing the various implicated E.O.s; consider the Plaintiffs' serious reliance interests; and examine important aspects of the problem. Summary judgment is therefore **GRANTED** in the Plaintiffs favor for their APA claims. The Defendants' motion for summary judgment on this basis is **DENIED**.

### B. Vacating the New Conditions

In addition to arguing that each of their claims should be resolved in their favor, the Plaintiffs ask this Court to vacate the New Conditions. Specifically, they

request that the Court "set aside the New Conditions—such that no applicant or awardee is required to agree to them and no condition is enforced against any grantee." ECF No. 96-1 at 64. "Where, as here, a court determines that an agency action is arbitrary and capricious or contrary to law, the APA authorizes the court to 'hold unlawful and set aside' that action." *New York v. Trump*, 811 F. Supp. 3d 215, 244 (D. Mass. 2025) (quoting 5 U.S.C. § 706(2)). Moreover, "[w]hen a reviewing court determines that agency ['actions'] are unlawful, the ordinary result is that the ['actions'] are vacated—not that their application to the individual petitioners is proscribed." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831, (2024) (Kavanaugh, J., concurring) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)). Accordingly, vacatur under the APA is typically not a party-specific remedy. *See, e.g., California v. United States Dep't of Transp.*, 808 F. Supp. 3d 291, 312 (D.R.I. 2025) ("This vacation applies to the unlawful action itself, rather than merely to its application to the individual challengers"); *see also e.g., New York v. Trump*, 811 F. Supp. 3d 215, 243-44 (D. Mass. 2025); *Afr. Communities Together v. Noem*, 820 F. Supp. 3d 48 (D. Mass. 2026). This considered and having found the Defendants violated the APA, the New Conditions must be vacated in their entirety.[6] *See Regents of the Univ. of Cal.*, 591 U.S. 1, 8 (2020); *see also Rhode Island*

---

[6] The Court acknowledges the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). In *CASA*, the Supreme Court held that federal district courts are not authorized to issue nationwide injunctions. *Id.* In a concurrence, however, Justice Kavanaugh reaffirmed the district court's ability to set aside agency actions. *Id.* at 869. This is consistent with his concurrence in *Corner Post, Inc.*, 603 U.S. at 826–843 (2024) (Kavanaugh, J., concurring), in which he writes "[w]hen a reviewing court determines that agency [actions] are unlawful, the ordinary result is

*v. Trump*, 810 F. Supp. 3d 283, 311-12 (D.R.I. 2025).  The Court limits its remedy to vacating the New Conditions the Defendants' have attempted to impose here.  The Plaintiffs' request that this Court vacate the New Conditions is **GRANTED**.

### C.  Permanent Injunction

The Plaintiffs also ask this Court to impose a permanent injunction "barring Defendants from enforcing any conditions to which grantees previously agreed and from imposing the same or substantially similar conditions by other means in the future." ECF No. 96-1 at 64.  With respect to this request, the Defendants assert that "should the Court grant Plaintiffs' motion, the only proper remedy would be vacatur of the contested agency action and remand to the Defendants to administer the contested grant programs within their statutory authorization." ECF No. 98 at 44.

"[A]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  Per recent Supreme Court precedent, district courts issuing permanent injunctions must ensure that they are limited to what is "necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2015).  "The standard for issuing a permanent injunction requires the district court to find that (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction;

---

that the 'actions] are vacated—not that their application to the individual petitioners is proscribed."

13

and (4) the public interest would not be adversely affected by an injunction." *Asociación de Educación Privada de P.R., Inc. v. García-Padilla*, 490 F.3d 1, 8 (1st Cir. 2007); *see also Doe v. Rhode Island Interscholastic League*, 137 F.4th 34, 40 (1st Cir. 2025). "District courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989). "In the context of analyzing claims under the APA, some courts have held that 'once the court reache[s] the conclusion that the rule was indeed illegal ... there [is] no separate need to show irreparable injury. . .'" *Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 97 (D.R.I. 2025) (quoting *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (modifications in original).

The Court finds that a permanent injunction is not warranted here. The Supreme Court has been clear: "If a less drastic remedy (such as partial or complete vacatur of [an agency's] [] decision) [is] sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co.*, 561 U.S. at 165-66. Here, vacating the New Conditions is sufficient to provide the Plaintiffs with complete relief. "[B]ecause vacatur voids and rescinds the [New Conditions] [themselves], it provides nationwide relief that redresses injuries suffered by [the Plaintiffs]." *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 143 (D. Mass. 2025); *see also Dorcas Int'l Inst. of R.I. v. United States Citizenship & Immigr. Servs.*, No. 26-cv-132-JJM-PAS, 2026 WL 1622708, at *55 (D.R.I. June 5,

14

2026), *judgment entered*, No. 26-CV-132-JJM-PAS, 2026 WL 1695954 (D.R.I. June 11, 2026).  Accordingly, the Plaintiffs request for a permanent injunction is **DENIED**.

## IV.  CONCLUSION

After careful consideration of the pending motions for summary judgment, ECF Nos 96 & 98, and for the reasons discussed in this Memorandum, the Court hereby Orders that:

1. The Plaintiffs' Motion for Summary Judgment, ECF No. 96, is **GRANTED** to the extent it seeks vacatur of the New Conditions.  The Court vacates the New Conditions as designated in the Appendix supplied by the Plaintiffs, ECF No. 96-1 at 70-74, pursuant to 5 U.S.C. §706.

2. To the extent that the Plaintiffs seek a permanent injunction, their motion is **DENIED**.

3. The Defendants' Motion for Summary Judgment, ECF No. 98, is **DENIED**.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge


August 14, 2026

15